# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

LOFT HOLDINGS, LLC, an Oklahoma )
limited liability company; and )
JULIAN CONSTRUCTION, LLC, an )
Oklahoma limited liability )
Company, )
  )
          Plaintiffs, )
  )
v. )    Case No. CIV-23-072-JAR
  )
MCCURTAIN COUNTY RURAL WATER )
DISTRICT #6, a/k/a KIAMICHI )
RURAL WATER DISTRICT 6, an )
Oklahoma rural water district; )
and JERRY CLAGG, an individual, )
  )
          Defendants. )

## OPINION AND ORDER

This matter comes before the Court on Defendants' Motion to Dismiss (Docket Entry #15). The parties consented to the jurisdiction of the undersigned as recognized in the Order entered July 31, 2023. On February 22, 2024, this Court received oral argument from counsel on the briefing.

On February 27, 2023, Plaintiffs commenced this case in this Court. Plaintiff Loft Holdings, LLC ("Loft") alleges it is a real estate developer in southeast Oklahoma while Plaintiff Julian Construction ("Julian") is a general construction company operating primarily in southeast Oklahoma. (Doc. No. 2, p. 2, ¶¶ 9-10). The Complaint acknowledges that Tommy Julian "is a member and primary representative of both Loft and Julian Construction", although they are not owned by one another. (Doc. No. 2, p. 3, ¶¶ 11-12).

Defendant McCurtain County Rural Water District No. 6 (the

"District") is a rural water district which provides water to customers in its designated territory in McCurtain County, Oklahoma. Defendant Jerry Clagg ("Clagg") is the manager for the District. (Doc. No. 2, p. 3, ¶¶ 13-14).

Plaintiffs state that the District solicits public bids for water development projects in its designated territory, including the installation of water lines and supporting infrastructure in new residential and commercial developments. (Doc. No. 2, p. 3, ¶15).

Plaintiffs expressly assert claims for

> multiple violations of the Equal Protection Clause and the Fourteenth Amendment of the United States Constitution, Oklahoma's Rural Water, Sewer, Gas and Solid Waste Management Districts Act, Okla. Stat. tit. 82, §§ 1324.10(A), *et seq*. . . . and Oklahoma's Public Competitive Bidding Act, Okla. Stat. tit. 61, §§ 101, *et seq*. . . . by the District and its manager, Mr. Clagg.

(Doc. No. 2, p. 1, ¶ 1).

Plaintiffs also contend that

> the District has instituted certain "Developer Requirements" pursuant to which a developer who desires to bid on public contracts must pay to the District an additional and exorbitant fee of 7% of the contract amount for inspection servicers – and an additional fee of 10% of the contract amount for administration costs, which, upon information and believe, is paid directly to Mr. Clagg. The percentage-based structure of these additional fees incentivizes the District and Mr. Clagg to reject lower bids in favor of higher bids to maximize their gains, contrary to the purpose and public policy of the Public Bidding Act.

(Doc. No. 2, p. 2, ¶2).

Plaintiffs allege that the Developer Requirements were revised

sometime between June of 2020 and October of 2021 to prohibit the developer or co-owner of a development from bidding on any related water development projects when the Developer Requirements did not have such a prohibition prior to the revisions. (Doc. No. 2, p. 3, ¶¶ 18-19). During the November 2021 meeting of the Board of Directors of the District, Plaintiffs allege that the Board adopted the Free and Fair Trade Policies which provide

> 1) All bidders for projects must include in their bid documents a Non-Collusion Affidavit verifying that they have not engaged in price-fixing, a Business Relationships Affidavit verifying any relationship they have to the architect, engineer, or other party to the project, a Payroll Affidavit that they have submitted payroll information to the U.S. Department of Labor, and state in their notarized Bid Proposal that they arrived at their bid independently, without any communication, consultation or agreement with any other bidder or competitor.
>
> 2) Bids from Developers/owners will not be accepted for reasons of conflict of interest.
>
> (Doc. No. 2, p. 4, ¶ 24).

The Board adopted and ratified the Free and Fair Trade Policies on November 16, 2021. (Doc. No. 2, p. 4, ¶ 25). The District explained the rationale for the policies in a Policy Memo, which stated

> Developers are in a unique position to monopolize the contracts for the installation of water lines in their developments. The cost of installation is paid by the developer to the contractor. The developer, therefore, can submit a bid at loss on the installation, but regain the deficit, plus additional funds, by the lower cost paid for the water lines and the lower percentage of the administration fee paid to the District. The developer is also in a unique position to allocatee

3

> labor and materials from the development in general to the construction of the water lines without reflecting that allocation on the costs associated with the water line project bid, as funds paid for both the general project and the water lines will both be expenses of the development. This ability and incentive to low-bid their own water-line projects by developers thus presents both a monopolistic unfair competitive advantage and a high risk of deceptive accounting.

(Doc. No. 2, p. 5, ¶ 26).

Plaintiffs allege that the District does not consistently enforce the Free and Fair Trade Policies in all water development projects. They identify a project involving the Choctaw Nation whereby it was allowed to install water line extensions in October of 2021 and other infrastructure on its own water projects and to dedicate the furnished materials to the District without offering such projects for public bidding. (Doc. No. 2, p. 5, ¶ 27).

Plaintiffs identify the Pine Hill Development ("Pine Hill") which Loft is developing near Broken Bow, Oklahoma. (Doc. No. 2, p. 5, ¶ 28). The District would provide water to Pine Hill. (Doc. No. 2, p. 5, ¶ 29). In early 2021, Loft advised the District of the need for water for Pine Hill and requested the District begin the bidding for the project. (Doc. No. 2, p. 5, ¶ 30). The District did not offer for Loft to install the water lines for the project. Plaintiffs allege that other developers were permitted to construct the water lines without public bidding. (Doc. No. 2, p. 5, ¶ 31).

The District began taking bids in October of 2021. Julian submitted a bid for $500,570.67 for the Pine Hill project, which was the

lowest bid for the project. (Doc. No. 2, p. 5, ¶¶ 32-33). Plaintiffs allege that Clagg instigated the District's declining Julian's bid on the basis that it violated the Free and Fair Trade Policies and, instead, awarded the contract to Lonehickory Cattle, LLC for $899,630.00. (Doc. No. 2, p. 6, ¶ 34). The 7% Inspection Fee and 10% Administration Fee was paid by Loft to complete the Pine Hill project. (Doc. No. 2, p. 6, ¶ 35).

Plaintiffs' counsel sent a letter to the District requesting review of the policies to determine if they were unfairly discriminatory and the Inspection Fee charged was excessive. The District declined to change the policies. (Doc. No. 2, p. 6, ¶¶ 36-37).

Plaintiffs' sole claim based in federal or federal constitutional law is brought by Loft against the District for the violation of Loft's rights under the Equal Protection Clause as enforced through 42 U.S.C. § 1983. Loft specifically contend that the District's Free and Fair Trade Policies unfairly discriminates against real estate developers and owners "as a class" by prohibiting them from submitting public bids on their own water development projects, who Loft asserts are most motivated to complete the project at the lowest bid. Loft contends the current policies are designed to maximize the percentage-based fees received under the Developer Requirements. Loft asserts that it has accrued damages in the unconstitutional enforcement of these policies.

Plaintiffs also assert declaratory judgment relief against the District for violations of the Oklahoma Public Bidding Act, Okla. Stat. tit. 61, §§ 101, *et seq.* and the Oklahoma Rural Water Districts Act,

Okla. Stat. tit. 82, §§ 1324.10(A), *et seq.* Plaintiffs assert a claim for violation of the Oklahoma Public Bidding Act, Okla. Stat. tit. 61, §§ 101, *et seq.* against Clagg. Julian asserts a claim against Clagg for tortious interference with contract. Loft brings a claim for unjust enrichment/constructive trust against Clagg.

The Equal Protection Clause to the United States Constitution provides that, "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Loft alleges that the Free and Fair Trade Policies are discriminatory on their face in that they unfairly discriminate against real estate developers and owners as a class by prohibiting them from submitting public bids on their own water development projects. As such is the case, a "suspect class" or a "fundamental right" as identified by the United States Supreme Court is not implicated and, therefore, the "rational basis" standard is employed rather than the "strict scrutiny" standard. *See* McLaughlin v. Florida*,* 379 U.S. 184, 192 (1964).

Unlike the classifications subject to strict or intermediate scrutiny, these state sponsored rules or laws are "accorded a strong presumption of validity" and it is the plaintiff's burden to overcome the presumption and show that the statute or law in question is *not* rationally related to a legitimate state interest. Heller v. Doe*,* 509 U.S. 312, 319 (1993). In meeting the rational basis standard, a legislature or government decision maker is not required to actually articulate, at any time, the purpose or rationale supporting its classification.

Under the "rational basis" test, "[a]n equal protection claim will fail if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Teigen v. Renfrow, 511 F.3d 1072, 1083 (10th Cir. 2007)(affirming Rule 12 dismissal of plaintiff's equal protection claim). The Tenth Circuit Court of Appeals presumes the rationality of the conduct at issue and requires the Plaintiff to "overcome the presumption of rationality." Id. at 1086; *see also* Heller v. Doe, 509 U.S. 312, 320-21 (1993) (holding plaintiffs have the burden to establish that the policy is unconstitutional and "to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record"). "[A] classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" Heller, 509 U.S. at 320 quoting Federal Communications Comm'n v. Beach Communications, Inc., 508 U.S. 307, 313 (1993).

In a case based on rational basis, defendants have "no obligation to produce evidence to sustain the rationality of [the law]." Id. The United States Supreme Court has encapsulated this stance by stating

> In the ordinary case, a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous.
>
> Romer v. Evans, 517 U.S. 620, 632 (1996).

Indeed, the Tenth Circuit has taken the "any reasonably conceivable" notion a step further in ruling

7

> we are not bound by the parties' arguments as to what legitimate state interests the [classification] seeks to further. In fact, this Court is *obligated* to seek out other conceivable reasons for validating [a state policy]." Powers v. Harris, 379 F.3d 1208, 1217 (10th Cir.2004) (quotation omitted). Thus, this court must independently consider whether there is any conceivable rational basis for the classification, regardless of whether the reason ultimately relied on is provided by the parties or the court. Id. This determination is a legal question which need not be based on any evidence or empirical data. *See* Schutz v. Thorne, 415 F.3d 1128, 1135-36 (10th Cir. 2005).

Teigen, 511 F.3d at 1084.

In this case, however, the District has provided a reasonable and rational basis for the Free and Fair Trade Policies. The requirements for affidavits disclosing any conflicts with conflicts, including business relations conforms with the Public Competitive Bidding Act of 1974. Okla. Stat. tit. 61 § 108. The stated basis for restricting developers from bidding on the water line installation is rationally based – to prevent a developer from submitting a bid which results in an economic loss because they have other means by which to recoup the losses which would not be available to an outside bidder. Even if the effective result is as Plaintiff suggest – that the District receives higher administration and inspection fees as a result – the rational basis test and controlling case authority does not preclude the policy. The basis for the policy may, in fact, be demonstrated in the allegations contained in the Complaint – Julian's bid was almost half of the next ultimately successful bid. As noted, while such empirical data is not required, it does lend some credence to the assertion of potential

collusion between the developer and contractor.

Plaintiffs also contend that the Choctaw Nation was not held to the policy in its construction project. This Court agrees with Defendants' assertion that this contention is of no moment since Loft has denied its status as a "class of one." Moreover, the Choctaw Nation's status as a sovereign which may or may not be bound by the same state law bidding constraints alters considerably the factual comparison with Loft.

Having found that a rational basis exists for the District's Free and Fair Trade Policies, Loft's equal protection claim must fail. Further, the remaining claims stated in the Complaint are either based upon the Declaratory Judgment Act or state law. The Declaratory Judgment Act does not in itself confer jurisdiction upon federal courts. Woods v. City & Cnty. of Denver, 62 F. App'x 286, 289 (10th Cir. 2003) (first quoting 28 U.S.C. § 2201(a); then citing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, (1950)). "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." Koch v. City of Del City, 660 F.3d 1228, 1248 (10th Cir. 2011)(quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998)). Since the sole federal claim which provided a basis for jurisdiction to this Court has been dismissed, this Court declines to exercises supplemental jurisdiction over the remaining claims seeking declaratory relief over state laws and those based solely upon Oklahoma state law. Accordingly, this action will be dismissed in its entirety.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (Docket Entry #15) is hereby **GRANTED**. As a result, this action is hereby **DISMISSED**.

IT IS SO ORDERED this 25th day of March, 2024.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE